IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
Electronically Filed

GENEVA THOMPSON
6133 MIDDLE ROSE CIRCLE
LOUISVILLE, KY 40272

AND

GARY ESTES
6133 MIDDLE ROSE CIRCLE
LOUISVILLE, KY 40272

*Plaintiffs*

VS.

HAROLD L. CUNNINGHAM, personally and as agent for COLORTYME FINANCIAL SERVICES
12110 CLOVERDALE DRIVE
GOSHEN, KY 40026

AND

DBHL INVESTMENTS, LLC D/B/A
COLORTYME FINANCIAL SERVICES
5717 PRESTON HIGHWAY
LOUISVILLE, KY 40219

*Defendants*

Case No. 3:14CV-751-R

Come the Plaintiffs, Geneva Thompson and Gary Estes, by counsel, individually and on behalf of all others similarly situated, upon personal knowledge as to their own acts, and upon information and belief, and for their Complaint state as follows:

## NATURE OF ACTION

1. This is a class action brought by Plaintiffs individually and on behalf of all individuals with whom Harold Cunningham and DBHL Investments, d/b/a ColorTyme Financial Services charged fees in connection to deferred deposit transactions in excess of statutory limits.

2. Both before and after these loan transactions, Defendants failed to provide legally required information to Plaintiffs regarding the transaction.
3. Moreover, through omissions and other acts, Defendants defrauded Plaintiffs and violated state laws including the Kentucky Consumer Protection Act, and KRS 286.9-010, et seq., and federal laws including the Truth in Lending Act, 15 U.S.C. 1601, et seq.
4. In Geneva Thompson's case, Defendants' acts and omissions resulted in her continued indebtedness for over two years, having paid over $2,000.00 on an original principal amount of $500, which Defendants claim she still owes.
5. In Gary Estes's case, Defendants' acts and omissions resulted in his continued indebtedness for nine months, having paid over $1,000.00 on an original principal amount of $500.00, which Defendants claim he still owes.

## JURISDICTION AND VENUE

6. Plaintiffs, and on behalf of the proposed class, allege claims under the common law and statutes of the Commonwealth of Kentucky, as well as under federal law, though state issues predominate.
7. The amount in controversy exceeds this Court's minimum jurisdictional requirement.
8. Venue is proper in this Court because the events giving rise to this dispute occurred in Jefferson County, Kentucky.

## THE PARTIES

9. Plaintiff Geneva Thompson (hereinafter "Ms. Thompson" or "Plaintiff Thompson") is a resident of Jefferson County, Kentucky.
10. Plaintiff Gary Estes ("hereinafter "Mr. Estes or "Plaintiff Estes") is a resident of Jefferson County, Kentucky.
11. Ms. Thompson is Mr. Estes's mother.
12. Defendant DBHL Investments, LLC, d/b/a ColorTyme Financial Services (hereinafter "ColorTyme") is a nondepository financial institution organized and licensed as a Check Casher under the laws of Kentucky, with a principal place of business in Jefferson County,

Kentucky at 5717 Preston Highway, Louisville, Kentucky 40219.

13. Defendant Harold L. Cunningham (hereinafter "Defendant Cunningham" or "Mr. Cunningham") is a resident of Oldham County, Kentucky, residing at 12110 Cloverdale Drive, Goshen, KY 40026, and claims to be the owner and operator of ColorTyme.

14. At all times relevant hereto, Defendant Cunningham was and represented himself to be an agent of ColorTyme.

15. In the alternative, Defendant Cunningham took actions and made statements outside his authority as ColorTyme's agent and is personally liable for breaching the implied warranty of authority he gave to plaintiffs and for the actions and omissions he committed outside the scope of his authority.

## Class Action Allegations

16. Plaintiffs bring this class action agains the Defendants pursuant to FRCP 23(b)(1) and 23(b)(3), on behalf of all persons who Defendants charged amounts in excess of statutory limits in connection with deferred deposit transactions.

17. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of class members is unknown to Plaintiffs at the present time.

18. Despite the numerical size, the identities of the Class members can be ascertained. Plaintiffs are two borrowers with whom Defendants engaged in deferred deposit transactions, Defendants have a statutory obligation to maintain records that will identify class members. Further, Defendants must report this information to the Deferred Presentment Transaction System.

19. Plaintiffs are members of a subclass of injured individuals from whom Defendants requested a check signed by the individual, but otherwise blank: devoid of payee, amount, or date, in violation of KRS 286.9.

20. Plaintiffs are members of an additional subclass of injured individuals Defendant Cunningham told that he or she would be charged this rate every month until the amount loaned was paid off. Additionally, Defendant Cunningham told each individual that he would

require a new signed (but otherwise blank) check every month.

21. Plaintiffs are members of an additional subclass to whom Defendants did not disclose in writing the cost of his or her loan as a finance charge or annual percentage rate in violation of the Truth In Lending Act.

22. Plaintiffs are members of an additional subclass to whom Defendants did not disclose a schedule of their fees.

23. Plaintiffs are members of an additional subclass to whom Defendants did not disclose that he or she could not be charged for bad checks or theft by deception in connection with the deferred deposit transaction.

24. Plaintiffs will fairly and adequately represent the interests of the Class and subclasses. Plaintiff is committed to vigorously prosecuting this action and has retained competent counsel to prosecute this matter. Plaintiff is member of the Class and has no interests antagonistic to orin conflict with other Class members. Plaintiff's attorneys have experience prosecuting class actions and will adequately represent the Class in this question.

25. This action raises question of law and fact which are common to the Class members, including but not limited to the following:

    a. Whether Defendants violated statutory limits for fees charged pursuant to deferred deposit transactions;

    b. Whether Defendants violated requirements to disclose in writing the cost of his or her loan as a finance charge or annual percentage rate in the Truth In Lending Act

    c. Whether Defendants violated statutory requirements to disclose a schedule of their fees or that their customers could not be charged for criminally in connection with deferred deposit transactions;

    d. Whether Defendants violated statutory requirements by accepting checks not payable to them;

    e. Whether Defendants violated statutory requirements by renewing, rolling over, or otherwise consolidating deferred deposit transactions for their customers.

26. The claims or defenses of the represented party are typical of the claims or defenses of the Class. Plaintiffs were harmed by the Defendants' unlawful activities. Plaintiffs have the same interests as the other Class members in prosecuting those claims against the Defendants. Plaintiffs and all members of the Class sustained damages as a result of the Defendants' unlawful conduct.

27. Defendants have or had access to address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## FACTS SPECIFIC TO GENEVA THOMPSON

28. In February 2012, Ms. Thompson borrowed $200.00 from ColorTyme in a purported deferred deposit transaction. Defendant Cunningham charged a "service fee" of $36.00. This "service fee" was not charged at the time, but instead Defendant Cunningham told Plaintiff to give him a signed, blank check: no amount, payee, or date was to be written on the check. Plaintiff gave Defendant Cunningham such check.

29. In March 2012, when Ms. Thompson's payment was due, she needed $500.00 to buy her granddaughter new glasses and called Defendant Cunningham to tell him she needed a new loan.

30. Defendant Cunningham told Ms. Thompson to keep the $200.00 cash she was going to pay him, and only pay the $36.00 service fee. Defendant Cunningham said he would roll the $200.00 she owed into a $500.00 loan by giving her an additional $300.00. Ms. Thompson told Defendant Cunningham she could not come into the store due to her poor eyesight, so he came to her house.

31. When Defendant Cunningham arrived, Ms. Thompson gave him $36.00 in cash, and Defendant Cunningham did not give her a receipt.

32. Defendant Cunningham then gave Ms. Thompson a piece of paper, blank other than two signature lines. He told Ms. Thompson to sign on those two lines and when she did he gave her the $300.00.

33. Thereafter, Defendant Cunningham told Ms. Thompson that she would be charged a $90.00

"service fee" per month until the balance was paid down.

34. Since that day, Ms. Thompson has paid ColorTyme at least $90.00 per month.

35. Defendant Cunningham also demanded additional signed, otherwise blank checks each month with her payment.

36. Ms. Thompson's only source of income is benefits paid to her by Social Security, which she receives on the third Wednesday of each month. She made her payments on the Thursday following that Wednesday.

37. At no time did Defendant provide Ms. Thompson with a copy of loan documents, or a Truth In Lending disclosure statement. This necessarily means that Defendant did not disclose in writing the cost of the loan as either a finance charge or as an annual percentage rate (APR).

38. In July of 2012, Ms. Thompson filed a Chapter 7 bankruptcy and did not list the debt to Harold because she did not believe she could list a debt to a payday lender. She has continued to make payments to ColorTyme despite this bankruptcy.

39. On or around January 3, 2014, Mr. Estes borrowed $500.00 from ColorTyme in a purported deferred deposit transaction for personal, family, or household purposes.

40. On or about February 20, 2014, Defendant Cunningham called Ms. Thompson and told her that she had guaranteed Plaintiff Estes's debt to ColorTyme. On that day she made her payment of $90 and another $90 payment on Mr. Estes's account to ColorTyme.

41. In June 2014, Ms. Thompson had $900.00 stolen from her. On or about June 23, 2014, Ms. Thompson called her bank and was very distraught to find out that her account was overdrawn. She would have no means to correct the overdraft until she received her Social Security benefits in July, and no money to buy any necessities until then.

42. While Ms. Thompson was on the phone with her bank, Defendant Cunningham came by her house to pick up a blank check for her son's debt.

43. Ms. Thompson told Defendant Cunningham she could not make her June 2014 payment and asked if she could make a double payment in July.

44. Defendant Cunningham told her she could postpone her payment, and asked for her debit

card. Still on the phone with her bank, Ms. Thompson gave Defendant Cunningham her debit card.

45. On information and belief, Defendant Cunningham ran Ms. Thompson's debit card number through an app on his cell phone. He turned the phone around for Ms. Thompson to see that her debit card was rejected.

46. Defendant Cunningham then took a piece of notebook paper from Ms. Thompson and wrote out a contract by hand for authorization to run Ms. Thompson's debit card on July 16, 2014 in the amount of $180.00. The contract continued "I give him permission to debit my card for the $180.00 amount and then $90.00 every month after till paid in full." Ms. Thompson, still on the telephone and distraught over the loss of her living expenses, may have signed this contract but does not recall doing so. **Exhibit 1.**

47. Defendant Cunningham then made a phone call. Ms. Thompson was on the phone with her bank and did not know who he called. Defendant Cunningham then left with the contract.

48. Ms. Thompson called ColorTyme after Defendant Cunningham left and spoke to "Lee." Lee told her that he had run her debit card for $5.00 and that it was accepted. This debit resulted in additional overdraft charges.

49. On information and belief, Defendant Cunningham told Lee to run that $5.00 charge without Ms. Thompson's authorization.

50. On or about July 14, 2014, Ms. Thompson called Defendant Cunningham but received no answer. Ms. Thompson left a voice mail advising him not to debit her account until she could verify the funds were in her account.

51. On or about July 15, 2014, Ms. Thompson called Defendant Cunningham again and received no answer. Ms. Thompson again left a voice mail advising him not to debit her account until she could verify the funds were in her account.

52. On or about July 17, 2014, Defendant Cunningham debited Ms. Thompson's account in the amount of $180.00 without her authorization. This unauthorized debit further overdrafted Plaintiff's account resulting in overdraft charges.

53. Defendants still claim Ms. Thompson owes them the original $500.00 borrowed.

## FACTS RELATING TO GARY ESTES

54. On or around January 3, 2014, Mr. Estes borrowed $500.00 from ColorTyme in a purported deferred deposit transaction for personal, family, or household purposes.
55. Mr. Estes told Defendant Cunningham that he would pay the balance with his tax refund.
56. On or around January 18, 2014, Mr. Estes made a $90.00 payment to ColorTyme.
57. On or around February 20, 2014, Mr. Estes's mother, Ms. Thompson, made a $90 payment on his account after Defendant Cunningham called her and told her that she had guaranteed his transaction.
58. On or around March 1, 2014, after receiving his tax refund, Mr. Estes went into ColorTyme's place of business and paid the balance of $590.00.
59. After Mr. Estes left the store, Defendant Cunningham called him and told him that he had applied Mr. Estes's payment to his sister's delinquent balance. Defendant Cunningham told Mr. Estes that his balance remained $589.25.
60. Defendant Cunningham and ColorTyme then resumed charging Mr. Estes the $90.00 monthly "service fee."
61. With each of these payments, Defendant Cunningham demanded Mr. Estes provide a signed, but otherwise blank check.
62. On or around March 11, 2014, Mr. Estes entered ColorTyme's place of business and spoke to Defendant Cunningham about settling the debt Defendant Cunningham claimed he owed.
63. Defendant Cunningham told Mr. Estes to come into a room in the back of the store. Once in the room, Defendant Cunningham drafted a contract which stated that Mr. Estes was to pay $100.00 per month for six months, starting on March 21, 2014 for a loan on February 21, 2014 - a total of $600.00.
64. Under the terms of the contract, if Mr. Estes failed to make these payments on the due date, he would be liable for "attorney fees, court costs, and filling [sic] fees." **Exhibit 2.**
65. Mr. Estes made $100.00 payments to ColorTyme on or around the 21st of each month.

66. On May 24, 2014, Defendant Cunningham texted Mr. Estes and demanded a $100 payment. Mr. Estes had not yet made his May payment and he texted Defendant Cunningham his truck had been repossessed.

67. Defendant Cunningham texted Mr. Estes in response and said "everyone had [sic] problems but life goes on and you make due [sic] so please I need to know how much you can bring me on Tuesday ? If not I will have to be at your work to serve you papers that Im [sic] filing on you and again I don't want to do that." **Exhibit 3.**

68. Defendant Cunningham texted Mr. Estes that if he filed suit, "It goes back to the full balance plus attorney fees and late fees and cort [sic] cost along with court fines and interest and would be right at around $1125." **Exhibit 4.**

69. Defendant Cunningham thereafter texted Mr. Estes that he "just spoke with one of your bosses who said you are off until Tuesday and that I can meet you at the office at 7:30 am before you go out or I can just go tonyour [sic] jobsite." **Exhibit 5.**

70. Mr. Estes thereafter made a payment of $50.

71. On June 23, 2014, Defendant Cunningham texted Mr. Estes stating "if I don't have the check in my office by 9am you have defaulted on our contract agreement and it will then be the full amount plus attorney fees and court cost along with fine. Per the contract you signed on camera with my office." **Exhibit 6.**

72. On or around August 21, 2014, Mr. Estes left work heading to ColorTyme's place of business to make his last payment at 5:20 p.m.

73. While Mr. Estes was en route, he called Defendant Cunningham to let him know he was on the way to ColorTyme to make his final payment. Despite store hours ending at 6:00 p.m., Defendant Cunningham told Mr. Estes he would not be in the store. Mr. Estes and Defendant Cunningham argued and Defendant Cunningham hung up after again telling Mr. Estes he would not be there. Based on Defendant Cunningham's statements, Mr. Estes turned around and went home.

74. At 6:05 p.m., Defendant Cunningham informed Mr. Estes that he was in default because he

did not timely make his last payment.

75. On or around August 23, 2014, Mr. Estes went to ColorTyme to make the final payment. Defendant Cunningham again took Mr. Estes alone into his office and demanded he pay another $200.00 over the next two months to avoid court proceedings.

76. Mr. Estes orally agreed to make these payments.

## COUNT I: FRAUDULENT OMISSION

77. Plaintiffs reiterate the allegations contained in the paragraphs above, as if fully set forth herein.

78. KRS 286.9-100(1) creates a duty for Defendants to disclose any fee, which cannot exceed $15.00 per $100.00 on the face of the deferred deposit instrument, in writing before entering into a deferred deposit transaction.

79. Defendants did not disclose their fees in writing before entering into the deferred deposit transactions with Plaintiffs and other class members.

80. Defendants did not disclose that these fees cannot exceed $15.00 per $100.00 on the face of the deferred deposit instrument.

81. Defendants' failure to disclose these facts to Plaintiffs and other class members induced them to pay fees in excess of the statutory limits.

82. Plaintiffs and other class members have suffered actual, countable damages due to Defendants' failure to disclose these facts.

## COUNT II: VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

83. Plaintiffs reiterate the allegations contained in the paragraphs above, as if fully set forth herein.

84. By engaging in the course of conduct alleged herein, Defendants engaged in unfair, false, misleading, and/or deceptive acts or practices in the conduct of trade and/or commerce.

85. The Plaintiffs and other class members are within the class of people the Kentucky legislature intended to protect with the Kentucky Consumer Protection Act.

86. The Defendants made false, unfair, deceptive, or misleading statements and acts to Plaintiffs and other class members, including, but not limited to the following:

a. violating the statutory requirements of deferred deposit lenders in ways including but not limited to the following:
    i. not disclosing Defendant's fees in writing. KRS 286.9-100(1)
    ii. charging a service fee in excess of statutory limits. KRS 286.9-100(1)
    iii. requiring Plaintiffs and other class members turn over payment instruments monthly without dates, amounts, or payee written on them. KRS 286.9-100(6)
    iv. using oral agreements to charge greater fees than authorized by statute. KRS 286.9-100(11)
    v. not requiring written transactions, signed and dated by Plaintiffs or other class members and Defendants, for every deferred deposit transaction. KRS 286.9-100(13)
    vi. not giving Plaintiffs or other class members disclosures in writing required by the Consumer Credit Protection Act. KRS 286.9-102(1)
    vii. accepting personal checks from Plaintiff and other class members not made payable to Defendant. KRS 286.9-102(4);

b. charging usurious interest rates;

c. not allowing Plaintiffs to apply any amount of money less than $25.00 over the "service fee" to their balances.

87. As a result of the above acts and practices made to the Plaintiffs and other class members, the Defendants have violated the Kentucky Consumer Protection Act, KRS 367.170.

88. As a result of the foregoing deceptive acts and practices, the Defendants have caused damages incurred by the Plaintiffs and other class members.

89. Plaintiffs and other class members are entitled to consequential and punitive damages, pre-judgment interest and attorney fees under the Kentucky Consumer Protection Act, KRS 367.170 et seq.

## COUNT III: VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT SPECIFIC TO GENEVA THOMPSON

90. Plaintiffs reiterate the allegations contained in the paragraphs above, as if fully set forth herein.

91. By engaging in the course of conduct alleged herein, Defendants engaged in unfair, false, misleading, and/or deceptive acts or practices in the conduct of trade and/or commerce.

92. Ms. Thompson is within the class of people the Kentucky legislature intended to protect with the Kentucky Consumer Protection Act.

93. In addition to the above false, unfair, deceptive, or misleading statements and acts to Plaintiffs, Defendants also violated the KCPA by:

    a. violating the statutory requirements of deferred deposit lenders in ways including but not limited to the following:

        i. rolling over Ms. Thompson's deferred deposit transaction KRS 286.9-100(14)

        ii. requiring Ms. Thompson to guarantee Mr. Estes's debt. KRS 286.9-100(8)

    b. offering a blank sheet of paper for signature in lieu of a contract;

    c. and debiting Plaintiff's bank account without authorization.

94. As a result of the above acts and practices made to the Ms. Thompson individually, the Defendants have violated the Kentucky Consumer Protection Act, KRS 367.170.

95. As a result of the foregoing deceptive acts and practices, the Defendants have caused damages incurred by Ms. Thompson.

96. Ms. Thompson is entitled to consequential and punitive damages, pre-judgment interest and attorney fees under the Kentucky Consumer Protection Act, KRS 367.170 et seq.

## COUNT IV: VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT SPECIFIC TO GARY ESTES

97. Plaintiffs reiterate the allegations contained in the paragraphs above, as if fully set forth herein.

98. By engaging in the course of conduct alleged herein, Defendants engaged in unfair, false, misleading, and/or deceptive acts or practices in the conduct of trade and/or commerce.

99. Mr. Estes is within the class of people the Kentucky legislature intended to protect with the Kentucky Consumer Protection Act.

100. In addition to the above false, unfair, deceptive, or misleading statements and acts to Plaintiffs, Defendants also violated the KCPA by:

    a. applying Mr. Estes's payment to his sister's account;
    b. holding Mr. Estes liable on a debt that he had duly paid in full;
    c. preventing Mr. Estes from timely making payments;
    d. charging additional fees for late payments Defendants prevented Mr. Estes from timely making;
    e. secluding Mr. Estes and threatening him with exorbitant and unlawful fees to coerce him to sign a new contract;
    f. holding Mr. Estes to perform on the unlawful contract;
    g. calling Mr. Estes's place of employment and threatening to serve him with court summons at work;
    h. and charging Mr. Estes additional and unlawful fees in connection with a purported deferred deposit transaction.

101. As a result of the above acts and practices made to Mr. Estes individually, the Defendants have violated the Kentucky Consumer Protection Act, KRS 367.170.

102. As a result of the foregoing deceptive acts and practices, the Defendants have caused damages incurred by Mr. Estes.

103. Mr. Estes is entitled to consequential and punitive damages, pre-judgment interest and attorney fees under the Kentucky Consumer Protection Act, KRS 367.170 et seq.

## COUNT V: USURY

104. Plaintiffs reiterate the allegations contained in the paragraphs above as if they are fully set forth herein.

105. Defendants loaned Ms. Thompson $500.00 in March 2012 and have charged her $90.00 per month since then on this original principal balance of $500.00.

106.Defendants loaned Mr. Estes $500.00 in January 2014 and have charged him $90.00 per month since then on this original principal balance of $500.00.

107.These charges amount to 18% interest per month or 216% interest per year, which far exceeds the statutory interest rate permitted by KRS 360.010.

108.Defendants knew that such rate of interest is greater than what is permitted by statute.

109.As a result of this ongoing, usurious transaction, Ms. Thompson has paid Defendant in excess of $2,500.00 and Defendant still claims Ms. Thompson owes the full principal borrowed.

110.Plaintiffs are therefore entitled to statutory damages equal to twice the amount of interest paid to Defendants under KRS 360.020.

## COUNT VI: TRUTH IN LENDING ACT

111.Plaintiffs reiterate the allegations contained in the paragraphs above as if they are fully set forth herein.

112.Defendants violated the requirements of the Truth in Lending Act by failing to provide the Plaintiffs and other class members with required disclosures, namely the cost of the loan as a finance charge and an annual percentage rate in writing, prior to consummation of the loan transaction in violation of 15 U.S.C. § 1605.

113.Defendant is therefore liable to Plaintiffs and other class members in the amount of twice the finance charge, or $2000, whichever is less, as well as actual damages, and attorney fees and costs in accordance with 15 U.S.C. § 1640.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SPECIFIC TO GARY ESTES

114. Plaintiffs reiterate the allegations contained in the paragraphs above, as if fully set forth herein.

115.The conduct of Defendants was outrageous in that it offends the generally accepted societal standards of decency and morality.

116.The conduct of the Defendants was intentional and/or reckless.

117. The conduct of the Defendants has caused Mr. Estes to suffer severe mental and emotional distress.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claim to which they are entitled to a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for an Order and Judgment certifying the Class and appointing Plaintiff as class representative and granting the following relief:

1. Payment to Plaintiffs and members of the Class actual, statutory, and compensatory damages permitted by the Defendants' violations of the above-named statutes;
2. That the Plaintiff and all others so similarly situated be awarded judgment against the Defendants for punitive damages for the conduct of the Defendants alleged herein;
3. For pre- and post-judgment interest;
4. For their attorneys' fees as allowed by KRS 367.170, et seq., 15 U.S.C. § 1640, and encouraged in equity;
5. A jury trial; and

Award Plaintiffs and all others similarly situated any and all other relief to which they appear entitled.

Respectfully submitted,

/s/ Ben Carter

Ben Carter
Joshua Goodnewt
Ben Carter Law PLLC
312 S. 4th St., Sixth Floor
Louisville, KY 40202
ben@bencarterlaw.com
502-509-3231
*Counsel for Geneva Thompson
and Gary Estes*

# EXHIBIT 1

I Genova S Thompson Give Permission to Debit my Card on Date 7/16/14 - I Genova Agree to pay Harold Cunningham on July 16th $180.00 from CC # [redacted]-7392

Exp 7/15 Code [redacted]

For $90 He paid on 6/23/14 And for Loan Due in July on 21st. I Give Him Permission to Debit my Card for the $180.00 Amount. And then $90.00 every Month After Till Paid in full.

[signature] 6/23/14

Geneva S. Thompson

Exhibit C

Defendants

# EXHIBIT 2

03/11/2014

I ______________________ agree to pay Colortyme Financial $100 per month starting on 03/21/2014 for a total of 6 months to end in August 21st 2014 for the loan on 02/21/14. If I fail to make payments on the due date I understand that Colortyme will file on the loan and add Attorney fee, court cost, and filling fees of which I will be responsible for. After the 6th payment is made I will be paid in full with a total of $600 paid back.

____________________________

Gary Estes

____________________________ 3/11/14

Harold Cunningham


6:54 PM
(502) 419-3489
everyone had problems but life goes on and you make due so please I need to know how much you can bring me on Tuesday ? If not I will have to be at your
May 24
work to serve you papers that I m filing on you and again I don't want to do that.
May 24
With the situation I'm in you'd do that over $400. You're kidding me
May 24
It goes back to the full balance
Type message

0746

# EXHIBIT 3


6:54 PM
(502) 419-3489
It goes back to the full balance plus attorney fees and late fees and cort cost along with court fines and interest and would be right at around $1125 I
May 24
don't like to do it but if I don't get paid you signed the agreement that says if you don't pay every month you will be responsible for all those charges
May 24
t I have a job to do. So again I ask how much can I expect on Tuesday
Type message

0747

# EXHIBIT 4


6:54 PM
(502) 419-3489
wonderful holiday
May 24
I just spoke with one of your bosses who said you are off until Tuesday and that I can meet you at the office at 7:30am before you go out or I can just g
May 24
o tonyour jobsite. Again I would really like to not have to do that but its up to you Gary
May 24
Gary I will make you an offer ! You bring me $50.00 on Tuesday and I will count it as your may payment ? Is that OK
Type message

0749

# EXHIBIT 5


6:55 PM
(502) 419-34
Not a problem Gary !! You get pissy with me and then hang up the phone in my ear after I help you ?? Well if I don't have the check in my office by 9am y
Jun 23
ou have defaulted on our contract agreement and it will then be the full amount plus attorney fees and court cost along with fine. Per the contract you s
Jun 23
igned on camera in my office
Jun 23
Type message

0759